522 So.2d 1201 (1988)
CANAL MARINE SUPPLY, INC. d/b/a Wagner Marine
v.
OUTBOARD MARINE CORPORATION OF WAUKEGAN, ILLINOIS and Mid-City Marine, Inc.
No. CA-8357.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
*1202 J. Forrest Hinton, Alexander M. McIntyre, Jr., McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for appellee Outboard Marine Corp.
Edward J. McCloskey, McCloskey, Langenstein & Stoller, New Orleans, for appellee Mid-City Marine, Inc.
Jacques F. Bezou, Derussy, Bezou & Matthews, New Orleans, for appellant Canal Marine Supply, Inc.
Before BYRNES, WARD, and WILLIAMS, JJ.
BYRNES, Judge.
This is an appeal from a judgment maintaining a peremptory exception of prescription in a suit brought under Louisiana's Unfair Trade Practices Act. (UTPA) R.S. 51:1401 et seq. We affirm.
On September 26, 1985, Canal Marine Supply Inc., d/b/a Wagner Marine (hereinafter Canal) brought suit against Mid-City Marine Inc. (Mid-City) and Outboard Marine Corp. (OMC) alleging that OMC and Mid-City had engaged in a course of conduct which culminated in the termination of Canal's dealership agreement with OMC and violated the UTPA. The petition also alleged fraud, negligence and defamation. OMC filed exceptions of improper venue, vagueness and no cause of action. Mid-City filed exceptions of vagueness and no cause of action. The trial court overruled the exceptions as to Canal's claims under the UTPA, but maintained the exceptions of vagueness and no cause of action as to the claims of fraud, negligence and defamation. Canal was given fifteen days in which to amend its petition. When Canal failed to do so, the trial court's ruling maintaining the exceptions and dismissing those claims became final. C.C.P. Art. 932.
Thereafter, OMC and Mid-City filed separate peremptory exceptions of prescription in which they urged that Canal's action was untimely under Sec. 51:1409 of the UTPA. That section provides in pertinent part that:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.
E. The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
Mid-City and OMC argue that the act which gave rise to Canal's right of action was the mailing of a letter on June 26, 1984, informing Canal of OMC's decision not to renew Canal's dealership agreement. Canal argues that its cause of action did not arise until the actual date the agreement terminated (September 30, 1984) because it had not suffered any "ascertainable loss of money" until then.
Canal states in brief that it did not actually begin to lose money as a result of OMC's action until the dealership agreement was terminated. Even if this were true (which is not at all clear), the argument misses the point. R.S. 51:1409 A. speaks of ascertainable loss of money or incorporeal property. It strains credibility to argue that no loss was ascertainable in this case until the dealership agreement actually terminated. Once Canal knew it would no longer have the right to sell OMC's products it also knew that it had suffered a loss, if not of money, at least of its incorporeal property (i.e. the dealership). Moreover, the amount of money lost was as ascertainable on June 26, when the letter of termination was received as it was on September 30 when the termination became effective. In either case proof of the amount of this loss would have to be based on past business and projected future sales. We also note that Canal's original petition alleges acts and monetary damage which occurred well before the letter of termination was ever mailed. To this extent *1203 at the very least, the loss was ascertainable on June 26, 1984 and the trial court correctly ruled that this was the date on which Canal's cause of action arose.
We now address the issue of the timeliness of Canal's suit. Canal states in its brief to this court that "... the defendant's unfair and deceptive acts occurred prior to the date of actual termination, [of the dealership agreement]". In our opinion, this admission is fatal to Canal's position. Under R.S. 51:1409 E., if the acts which gave rise to Canal's right of action under the UTPA occurred prior to termination of the dealership agreement, Canal had one year from the time those acts occurred to bring suit. Since this was not done, Canal's right to sue had, in the language of the statute, "prescribed".
Canal argues that even if the acts which gave rise to its cause of action occurred more than one year before suit was filed, the prescriptive period of R.S. 51:1409 E. did not toll because Canal was unaware of some of those acts. This ignorance, Canal argues, brings the doctrine of contra non valentum into play. The trial judge resolved this question by ruling that the one year period was peremptive and therefore not subject to interruption or suspension. We agree.
In determining whether a time limitation fixed by law is prescriptive or peremptive courts consider a number of criteria. As a general rule, if the statute which creates a right also provides the time period in which that right must be exercised, the period is viewed as peremptive. Guillory v. Avoyelles R.R. Co., 104 La. 11, 28 So. 899 (La. 1901). However, this general rule is not the sole test for determining the nature of a time limitation. Courts should also consider the legislative intent as revealed by the statute in its entirety, including the purpose sought to be achieved. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), Pounds v. Schori, 377 So.2d 1195 (La.1979).
R.S. 51:1409 A. created a cause of action which did not exist in Louisiana before 1972. R.S. 51:1409 E. enacted at the same time, fixed the time period in which this newly created right must be exercised. Thus, under the general rule of Guillory v. Avoyelles R.R. Co., supra, the period would be peremptive. However, as discussed above, this does not close our inquiry into the matter. We must also analyze the intent of the legislature in creating the right which Canal seeks to invoke.
Taken as a whole, the UTPA is intended to protect the public's interest in fair trade and competition. The fact that private persons may invoke the provisions of the act to redress their individual injuries does not change the basically public nature of this law. Moreover, it is clear that R.S. 51:1409 is penal in nature. Its provision for triple damages is obviously intended to punish the wrongdoer as well as provide private individuals with an incentive to bring suit. Because the statute is penal in nature, it is subject to reasonably strict construction. Morris v. Rental Tools, Inc., 435 So.2d 528 (La.App. 5th Cir. 1983), Coffey v. Peoples Mortgage and Loan of Shreveport Inc., 408 So.2d 1153 (La.App. 2nd Cir.1981).
In our opinion the time period set forth in R.S. 51:1409 E. must be viewed as peremptive. The special nature of the private right of action under the UTPA and the serious consequences of a successful action both militate in favor of an absolute, uninterruptable time period. The UTPA's provision for triple damages is in derogation of the ordinary rules on damages. Likewise, the right of a private individual to bring suit under the UTPA is a special feature in a law which, in all other respects, depends on the attorney general and other public administrative officials for enforcement. By including a provision setting forth the time in which the private right of action must be asserted, the legislature showed an intent to remove this unique right from the ordinary rules of prescription. The plain language of R.S. 51:1409 E. shows an intent to make that period absolute (that is peremptive). Section E. provides that the action must be brought within one year "... running from the time of the transaction or act which gave rise to this right of action". There is no qualifying language *1204 attached to this very definite statement of when the clock starts running on a private action under the UTPA. If the legislature had wanted this time period to be interruptable it could either have said so specifically or have let the ordinary rules of prescription apply by not making special provision for it in the act. It did neither.
Under these circumstances we agree with the trial court that the one year period of R.S. 51:1409 E. is peremptive. Canal's suit, filed more than one year after the acts which gave rise to its right of action, was therefore properly dismissed.
Costs of this appeal are to be paid by Canal.
AFFIRMED.